*In re* ESTATE OF ALLEN M. DORFMAN, Deceased (Meridian Health Administrators, Inc., *et al.*, Plaintiffs-Appellants, v. Estate of Allen M. Dorfman *et al.*, Defendants-Appellees).

No. 84—0567

Opinion filed November 20, 1985.

Theodore A. Sinars, John J. Jiganti, and William E. Borenstein, all of Harris, Burman, Sinars & Jiganti, and David A. Dorfman, both of Chicago, for appellants.

Leonard Grossman and John Secaras, both of United States Department of Labor, and Michael Pope and Robert J. Bates, Jr., both of Phelan, Pope & John, both of Chicago, Steven G. Applehans, of Rosing, Applehans & Smith, of Waukegan, and Francis X. Lilly, Solicitor of Labor, David H. Feldman, Bruce F. Rinaldi, and Richard O. Patterson, all of Washington, D.C., for appellees.

PRESIDING JUSTICE NASH delivered the opinion of the court:

Plaintiffs bring this interlocutory appeal from an order of the circuit court which denied their respective motions, filed in the estate of Allen M. Dorfman, deceased, for "Distribution of Trust Proceeds" to plaintiffs in the aggregate sum of $928,839.57. The monies sought by plaintiffs represented a refund to the estate of bail bond security made by the Clerk of the United States District Court for the Northern District of Illinois, which had been earlier posted to secure the release from custody of Allen M. Dorfman after his conviction of Federal criminal offenses. After hearings, the trial court denied plaintiffs' motions and they appeal, contending: (1) that plaintiffs were, as a matter of law, entitled to these funds, which they had advanced to secure Dorfman's bond, as plaintiffs had complied with local Federal rules relating to the refund of bond monies; (2) the trial court considered improper evidence in ruling upon plaintiffs' motions; (3) the decision of the trial court was contrary to the evidence and applicable law; and (4) equity requires return of the bond money to plaintiffs who had advanced it.

The record discloses that decedent, Allen M. Dorfman, had been a defendant in a criminal action brought against him in the United States District Court for the Northern District of Illinois. After trial and his conviction in December 1982, an appearance bond was set by the court in the sum of $1,000,000 cash and also all of the common stock in an incorporated insurance agency owned by Dorfman and his mother. Funds were sought from various enterprises in which Dorfman had interests, his associates and family and on December 17, 1982, Allen Dorfman, his son David, and two attorneys appeared in the office of the clerk of the district court to make bail. Cashier's checks issued by the Manufacturers Bank of Chicago and the American National Bank payable to the clerk of the court were tendered to the clerk in the following amounts and indicated these remitters:

$385,000 - Morton Harris & Morris Weiser
250,000 - Federal Services Co., Ltd.
100,000 - Federal Computer Systems, Inc.
375,000 - Prescription Plan, Inc.
360,000 - Meridian Health Administrators, Inc.
340,000 - The Meridian Agency, Inc.
375,000 - Allen Dorfman
315,000 - David Dorfman
$1,000,000

The clerk took the checks to District Judge Prentice Marshall for approval and, when he returned, inquired in what manner the checks were to be receipted. In an affidavit which was admitted in evidence by stipulation in the trial court, deputy clerk Perry Moses stated that Allen Dorfman told Moses to issue the receipts in Allen Dorfman's name and that one of Dorfman's attorneys said to do whatever was easiest. Moses made out the receipts for each check to Allen Dorfman and they were received by his son, David. Receipts for the certificates of stock, which were also tendered to secure the bond, were issued by the clerk in the names of its owners, Allen and Rose Dorfman.

Allen Dorfman was released on the bail bond thus posted and, on January 20, 1983, died as a result of gun shots inflicted by persons unknown. On January 24, decedent's estate was opened for probate in the circuit court of Lake County and letters of office issued to his sons, James and David Dorfman, as executors. The executors subsequently moved in the district court for termination of Dorfman's bond, and requested the $1,000,000 cash deposit, with earned interest, be paid over to the estate. That motion was granted on January 26 and the funds given over by the clerk to the executors of decedent's estate, who presently hold it in that capacity.

In February 1983, the executors moved in the district court to vacate the earlier order which had transferred the money to the estate and for issuance of a new order directing the bond monies be paid to the respective plaintiffs, who were alleged to have been the actual depositors of the funds. After considering evidence and the arguments of the parties, Judge Marshall denied plaintiffs' motion. In doing so the court found that when the $1,000,000 was deposited the receipt was in the name of Allen Dorfman at his express direction and that no depositor, other than Dorfman, had then claimed any interest in the funds. The court determined that in such circumstances Local Criminal Rule 1.10D, relied upon by plaintiffs, did not permit the relief requested and the matter should be pursued in the circuit court of

Lake County, where the estate was in probate. No appeal was taken by plaintiffs from that judgment.

Subsequently, plaintiffs, or their assignee, filed separate motions in the estate proceedings in the circuit court which were identical, except for the sums for which recovery was sought. These motions requested "Distribution of Trust Proceeds" and alleged, *inter alia,* that each plaintiff had deposited funds with the clerk of the district court to secure the appearance of Allen Dorfman under the bond set by the court. As such, it was alleged, the funds constituted a special fund and trust; they were not under the ownership, custody or control of Allen Dorfman and were at all times owned by the respective plaintiffs; that the funds paid over to the executors by the district court clerk were traceable to the estate and, as trust funds not belonging to the estate, should be delivered to plaintiffs as beneficiaries. The motions also alleged that the executors of the estate agree the bond funds should be returned to plaintiffs, who were the actual depositors of it.

In addition to this motion, each plaintiff, or his assignee, also filed a claim in contract against the estate of decedent in the amount of the funds posted as bond and adopted, as his claim, the allegations of the motion for distribution earlier described. The claim was described on its face as protective, in the event the pending motion was denied, and apparently remains pending in the trial court.

The trial court appointed a special administrator to represent the interests of the estate in that matter and, after an evidentiary hearing, denied plaintiffs' motions for distribution of trust proceeds. In doing so, the trial court found that the funds provided by plaintiffs to secure the bond were loans to Allen M. Dorfman and, therefore, includable in his estate; that no express trust was created and that there was no basis upon which a constructive or resulting trust could be created with regard to those funds. The trial court also made findings there was no just reason for delaying enforcement or appeal, pursuant to Supreme Court Rule 304(a) (87 Ill. 2d R. 304(a)), and plaintiffs appeal.

By their notice of appeal and arguments in this court plaintiffs seek review and reversal only of the finding of the trial court the funds posted as bond were loans to Allen M. Dorfman and now are a part of his estate. Plaintiffs' pleadings in the trial court were directed to the imposition of a "special fund and trust" in the disputed funds in an effort to remove the funds from the estate to be returned to plaintiffs. In the briefs of the parties, we are advised that other claims against the estate exceed the sums here sought from it by

plaintiffs, and it is thus understandable why plaintiffs would wish to recover these funds by the means urged rather than seek to do so as a claimant against the estate. Plaintiffs do not, however, contend on appeal that a trust should be imposed or that the trial court erred in rejecting their motions which were premised upon "trust" grounds.

■ Theories not advanced and argued on appeal or supported by appropriate citation of authority are deemed waived. (*Saldana v. Wirtz Cartage Co.* (1978), 74 Ill. 2d 379, 386, 385 N.E.2d 664; *Flynn v. Vancil* (1968), 41 Ill. 2d 236, 242, 242 N.E.2d 237.) As plaintiffs have abandoned on appeal the theory upon which they sought relief in the trial court under their motions seeking declarations of trust and distribution of the proceeds, there is, arguably, no basis upon which this court can grant relief and the appeal should be dismissed. (See *Biggs v. Spader* (1951), 411 Ill. 42, 44, 103 N.E.2d 104, *cert. denied* (1952), 343 U.S. 956, 96 L. Ed. 1356, 72 S. Ct. 1051; *E.M.S. Co. v. Brandt* (1968), 103 Ill. App. 2d 445, 448, 243 N.E.2d 695.) However, in the interests of judicial economy, we review the issues raised by plaintiffs' brief.

## I

Plaintiffs contend first they are entitled to return of the bond funds advanced as a matter of law, arguing they complied with the terms of local Federal Criminal Rule 1.10D relating to bail bond procedures in the Federal district court by which, in the proper circumstances, funds deposited to secure a bond may be refunded to someone other than the defendant.

■ It is apparent plaintiffs here collaterally attack a judgment of the Federal district court from which they had not appealed in that jurisdiction, and they may not do so. Any relief sought from the judgment which applied the procedural rules of that court to plaintiffs' request for refund there must be to the Circuit Court of Appeals (7th Circuit) and this court may not exercise jurisdiction. (*Aaron v. Dausch* (1942), 313 Ill. App. 524, 536, 40 N.E.2d 805; *Walker v. Cockrell* (1982), 110 Ill. App. 3d 562, 564, 442 N.E.2d 660, *appeal denied* (1982), 93 Ill. 2d 548.) We will not consider this argument further.

## II

■ ■ Plaintiffs next contend the trial court improperly considered post-event acts and testimony relating thereto in determining what was the intent of the parties when plaintiffs deposited the funds to secure Dorfman's bond, and relied upon such matters in erroneously concluding it was a loan. Plaintiffs argue the proper evidence to

consider when interpreting an agreement is that which is relevant at the time of formation (*Western Transportation Co. v. Wilson & Co.* (7th Cir. 1982), 682 F.2d 1227, 1231; *F. W. Hempel & Co. v. Metal World, Inc.* (7th Cir. 1983), 721 F.2d 610, 614), and that the most important object is to give effect to the true intentions of the parties. (*Schek v. Chicago Transit Authority* (1969), 42 Ill. 2d 362, 364, 247 N.E.2d 886.) Plaintiffs assert it was thus error for the trial judge to consider events occurring after December 17, 1983, when the bond was posted. In particular, plaintiffs object to consideration of the affidavit of the court clerk (admitted in evidence by stipulation) that Allen Dorfman directed the clerk to issue receipts in Dorfman's name; testimony of Marilyn Dorfman, decedent's wife, that her husband told Mr. Harris and Mr. Weiser when they put up $385,000 that he would repay them, and that Mrs. Dorfman subsequently did so from her assets after her husband's death; and, the trial court's reliance upon evidence that the plaintiffs did nothing after providing the funds until January 20, 1983, to effectuate a proper receipting from the court clerk to assure that any refund would be to them.

The trial court did in its memorandum opinion note these matters, among other things, as evidencing an intent on the part of plaintiffs and Allen Dorfman that the funds were a loan to him and that it was from him that they expected to be repaid. We do not agree, however, that the trial court erred in doing so.

Evidence as to intent of parties to an ambiguous agreement, as it must be considered here, may be drawn from either contemporaneous or subsequent acts or conduct, looking to the substance and not the form of the transaction. (*Thread & Gage Co. v. Kucinski* (1983), 116 Ill. App. 3d 178, 183, 451 N.E.2d 1292, *appeal denied* (1983), 96 Ill. 2d 566; *Hodgman, Inc. v. Feld* (1983), 113 Ill. App., 3d 423, 428-29, 447 N.E.2d 450; see *Northern Trust Co. v. Tarre* (1981), 86 Ill. 2d 441, 427 N.E.2d 1217.) Cases cited by plaintiffs are inapposite, as they relate to interpretation of unambiguous written documents which themselves purport to express the parties' intentions, making subsequent actions irrelevant as to the question of intent at the time of contracting. Plaintiffs' argument thus is without merit.

### III

■ Plaintiffs next contend the finding that they loaned the funds to Dorfman is not supported by law, arguing that the purpose of a bond is to guarantee defendant's appearance and that Illinois recognizes a bond is often posted by friends, relatives or benefactors. (See *A—1 Lithoplate, Inc. v. AFS Publishing Co.* (1978), 66 Ill. App. 3d

560, 384 N.E.2d 395.) They also assert that expectancy of return of the funds to depositors is a fundamental precept in posting bond, which is especially true where the funds were never in custody, control or ownership of defendant (see *Collosseo v. Lynn* (1980), 88 Ill. App. 3d 344, 410 N.E.2d 577), and that the evidence is clear the parties never intended to loan Allen Dorfman any money, but simply to post bond for him.

A bail bond is a security, or guarantee, posted to release a person from custody. (*People v. Leon* (1980), 82 Ill. App. 3d 344, 346, 402 N.E.2d 844; *A—1 Lithoplate, Inc. v. AFS Publishing Co.* (1978), 66 Ill. App. 3d 560, 561, 384 N.E.2d 395.) A loan, however, is an advancement or delivery of money by one party with receipt by another party upon a contract, express or implied, to repay at some future date, with or without interest. (*Chapin v. Tampoorlos* (1945), 325 Ill. App. 219, 223, 59 N.E.2d 334; Black's Law Dictionary 844 (5th ed. 1979).) Whether an oral contract exists, its terms, conditions and the parties' intent, are questions of fact for the trier of fact. (*Howard A. Koop & Associates v. KPK Corp.* (1983), 119 Ill. App. 3d 391, 400, 457 N.E.2d 66; *Hodgman, Inc. v. Feld* (1983), 113 Ill. App. 3d 423, 428, 447 N.E.2d 450.) The trial judge is in a superior position to hear and weigh evidence and determine credibility of the witnesses, and his decision will not be overturned unless contrary to the manifest weight of the evidence. *In re Estate of Elson* (1983), 120 Ill. App. 3d 649, 655, 458 N.E.2d 637; *In re Estate of Schisler* (1980), 81 Ill. App. 3d 280, 282, 401 N.E.2d 301.

Plaintiffs essentially rely upon three Federal cases. *Midland Insurance Co. v. Friedgood* (S.D.N.Y. 1984), 577 F. Supp. 1407, is inapplicable as it is based upon New York law. The cited case closest factually to the present case is *Neely v. United States* (S.D. Fla. 1973), 357 F. Supp. 713, where plaintiff sought return of money he posted as a Federal criminal bond for Michael Sanzone. The money was subsequently paid over by the clerk of court to the United States pursuant to a Federal tax levy made against Sanzone. The question, determined by that court to be one of fact, was who owned the money and was it subject to levy. Based on its facts, the district court determined there was neither an intent to make a loan nor delivery of the money to defendant. The court found it to be significant that plaintiff Neely had sought to secure a receipt for the fund deposited to himself, but was precluded due to lateness of the hour at the time of deposit and absence of court staff to draft it. The court concluded that the advancement of the bond money was not a loan to Sanzone and, as the money belonged to Neely, it was not subject to a government levy

against Sanzone. In the case at bar, however, a receipt was issued to Dorfman by the clerk for the funds, as directed by Dorfman, thus giving unilateral control of the funds to him at that point. Plaintiffs also rely upon *United States v. Parr* (5th Cir. 1979), 594 F.2d 440, where the disposition and ownership of decedent's former bail bond was in issue. There, under its facts, title to the funds was found not to have passed to decedent based upon the evidence of intent of all concerned parties. Other cases cited by plaintiffs are either inapposite or have distinguishable factual circumstances where the courts again relied upon the principle that questions of ownership and refund of a bail bond and whether it is a loan, gift or guarantee are based upon the intent of the parties to be drawn from the facts. See *Jacobson v. Hahn* (2d Cir. 1937), 88 F.2d 433; *People ex rel. Litvinchuk v. Fassbender* (1940), 305 Ill. App. 230, 27 N.E.2d 305.

The evidence considered in the present case supports the conclusion that funds advanced for Dorfman's bond were in his control and that he had authority to determine how they would be receipted. The son's actions in obtaining the various checks from Dorfman's family, friends and Dorfman Enterprises lead to the inference the son was his agent and the funds in Dorfman's control. We note, too, evidence that Federal Services Co., Inc., Prescription Plan, Inc., Meridian Health Administrators, Inc., and Meridian Agency, Inc., recorded the transactions at issue as loans on their books. As noted earlier, Mr. Weiser and Mr. Harris were told by decedent they would be repaid when James Dorfman was able to convert certain securities to cash. Allen Dorfman also told his wife the money was to be repaid as quickly as possible, and he reaffirmed to Weiser and Harris they would be repaid; his wife subsequently did so and was assigned their claims. Further, the trial court found Weiser and Harris intended they would be tendered back funds other than those posted for bond.

The trial court also found it significant that in the period of nearly two months between the posting of the bond and the Federal court order transferring the funds to the estate, plaintiffs took no action to effectuate a receipt in their names of the monies they now assert remained their property. It is apparent that absent Dorfman's untimely demise, the bond could have been held by the court for a long trial and appeal period, forfeited or reassigned by Dorfman, who had that right under the Federal rules as the bond was receipted to him. Yet, plaintiffs took no steps to assert any interest in the funds prior to Dorfman's death, nor did they object to the initial transfer of the money to his estate.

■ While claimants argue that different conclusions may be

drawn from the evidence, if that is correct here a court of review should accept the trial court's judgment. (*In re Estate of Gigele* (1978), 64 Ill. App. 3d 136, 139, 380 N.E.2d 1144; *Shanahan v. Schindler* (1978), 63 Ill. App. 3d 82, 93, 379 N.E.2d 1307, *appeal denied* (1978), 71 Ill. 2d 620.) Further, as noted by the special administrator of the estate, while the Federal bond procedure is not determinative in this court as to ownership of the funds, the fact that it allowed Allen Dorfman unilateral control of the funds does relate to the parties' intent and supports a loan theory. The trial court rejected claimants' other arguments to the effect that decedent was merely a third-party beneficiary of their largess, and we conclude its findings that loans were made by plaintiffs to Allen Dorfman are supported by the record and are not against the manifest weight of the evidence.

## IV

Plaintiffs finally contend that equity requires the bond deposit be returned as money rightfully belonging to them, rather than to the estate. (*Board of Commissioners v. County of Du Page* (1983), 119 Ill. App. 3d 1085, 457 N.E.2d 1291, *rev'd on other grounds* (1984), 103 Ill. 2d 422, 469 N.E.2d 1370; *Gill Custom House, Inc. v. Gaslight Club, Inc.* (1975), 28 Ill. App. 3d 1066, 330 N.E.2d 559.) Plaintiffs cite *A—1 Lithoplate, Inc. v. AFS Publishing Co.* (1978), 66 Ill. App. 3d 560, 384 N.E.2d 395, as demonstrating bond money is often advanced by third parties and they should not be deprived of the funds once the bond conditions have been met and defendant discharged from its obligations. Plaintiffs also again point to the claimed failure of the clerk of the district court to comply with local Federal Criminal Rule 1.10D to plaintiffs' loss.

In Illinois courts the clerk holds money deposited as bail until a defendant has been discharged from the obligations of his bond when the clerk shall, after certain statutory deductions, return it to the accused or his sureties, or as otherwise ordered by the court (Ill. Rev. Stat. 1983, ch. 38, pars. 110—7(f), 110—8(f); see also *A—1 Lithoplate, Inc. v. AFS Publishing Co.* (1978), 55 Ill. App. 3d 560, 562, 384 N.E.2d 395; *People v. Dabbs* (1974), 24 Ill. App. 3d 252, 255, 321 N.E.2d 185). Similarly, local Federal Criminal Rule 1.10D, relating to refund of bond monies, regulates the return of funds deposited to secure a defendant's bond in the district court. The Illinois bail statutes do not apply to the transaction here addressed, and the Federal rules have been applied, resulting in the determination plaintiffs were not entitled to a refund thereunder. The trust arguments advanced by plaintiffs in the trial court have been abandoned on appeal

to this court.

We find no basis to apply the general equitable principles relied upon by plaintiffs, as they have an adequate remedy at law through the claims pending against decedent's estate.

Accordingly, the judgment of the circuit court is affirmed and the cause remanded for further proceedings.

Affirmed and remanded.

LINDBERG and UNVERZAGT, JJ., concur.