David, Justice, dissenting.
 

 I respectfully dissent from the majority's opinion. The case at bar is one dealing with an issue of first impression in our State. No other Indiana appellate case has expressly decided whether garnishment of criminal bail bonds held by the clerk of a court is permissible to satisfy an unrelated civil judgment. Thus, we are not bound by precedent on this issue and, in the absence of express statutory authority permitting garnishment of bail bonds in a criminal case to satisfy a judgment in an unrelated
 civil case, Garner should be precluded from garnishing the cash bond Kempf posted. Accordingly, I would hold that the Vanderburgh County Clerk cannot be held liable for complying with the criminal court's order to release the proceeds of the cash bond.
 

 The majority correctly articulates much of our State's garnishment and bail bond law. Indeed, a judgment-creditor who believes a third party holds or controls the judgment-debtor's property that is subject to garnishment is instructed by Trial Rule 69(E)(4) to name the third party as a garnishee-defendant in the complaint for proceedings supplemental and to serve both the debtor-defendant and garnishee-defendant with a summons. A judgment creditor who follows these instructions undoubtedly acquires an equitable lien on funds owed by a third party to the judgment-debtor; such lien is acquired at the time the third party receives service of process in proceedings supplemental.
 
 Fifth Third Bank v. Peoples Nat'l Bank
 
 ,
 
 929 N.E.2d 210
 
 , 214 (Ind. Ct. App. 2010). Furthermore, I do not disagree that Indiana's garnishment statute clearly makes "clerks of the circuit and superior courts" subject to garnishment to the extent they have "money or choses in action" belonging to a judgment-creditor "at the time of service of the garnishee process."
 
 Ind. Code §§ 34-25-3-1
 
 (a)(1)(A), 1(b). But I'm not convinced that bail bonds, despite at times being held by court clerks, are subject to garnishment in the same way that other money held by a third party is.
 

 Bail bonds are different and were not intended to be subject to garnishment under these circumstances. As Judge Pyle articulated in his Court of Appeals dissent, the statutes outlining the parameters of bail bonds are criminal in nature, and must, therefore, be construed strictly. Indiana Code section 35-33-8-1 defines a "bail bond" as a bond that is "executed by a person who has been arrested for the commission of an offense, for the purpose of ensuring (1) the person's appearance at the appropriate legal proceeding; (2) another person's physical safety; or (3) the safety of the community." While our bail bond statute allows a court to "retain [bail bond] cash to pay publicly paid costs of representation and fines, costs, fees, and restitution ...,"
 
 Ind. Code § 35-33-8-3
 
 .2(a)(1), it does not explicitly authorize wholesale garnishment of bail bonds by judgment creditors. In fact, the statute contemplates only one instance in which garnishment of a bail bond held by a court clerk is permissible to satisfy a civil judgment: that is, only where the civil case arose out of the same transaction or occurrence as the underlying criminal matter. See
 
 Ind. Code §§ 35-33-8-7
 
 (b).
 

 The majority takes a view of the relevant statutes that is much too broad. Rather than confining the circumstances in which a judgment creditor may garnish bonds to those enumerated by our legislature, it broadly holds that because our bail bond statutes do not explicitly prohibit garnishment, doing so must be permissible. The majority also reads Section 7(b) as merely " 'provid [ing] an additional safeguard' for judgment-creditors who are victims of the judgment-debtor's crime" and concludes that the section, therefore, "does not limit garnishment to those narrow circumstances [outlined by the bail bond statute]." Op. at 1096. Such a broad reading is not reconcilable given our legislature's affirmative act of limiting garnishment to circumstances arising out of the same transaction or occurrence as those in the underlying criminal case. It is also contrary to the long-standing canon of construction
 
 expressio unius est exclusio alterius
 
 : the expression of one thing implies the exclusion of others.
 
 See
 

 State v. Willits
 
 ,
 
 773 N.E.2d 808
 
 , 813 (Ind. 2002). Through its broad holding, the majority
 reads exceptions into the statute that are not there and ignores that the legislature has already outlined several exceptions in section 3.2(a)(2): bail money taken to pay costs of representation, fines, fees, and restitution. Since the bail bond statutes expressly include not one, but several instances when funds need not go to the defendant, we can infer that the legislature intended no others. Today's decision judicially grafts language onto our bail bond statutes.
 

 Our case law also supports a narrower reading of the relevant statutes.
 
 O'Laughin v. Barton
 
 ,
 
 549 N.E.2d 1040
 
 (Ind. 1990) is the only case our Court has decided that deals with a similar issue. There, we tackled whether a judgment-creditor could garnish a cash bond before the bail was forfeited to the common school fund.
 

 Id.
 

 Our Court held that the appellant's cash bond must be forfeited, and we ordered the clerk to transmit the funds resulting from said forfeiture for placement in the common school fund.
 

 Id.
 

 at 1042
 
 .
 
 O'Laughlin
 
 's holding indicates that, as a general matter, cash bonds cannot be garnished. In my view, Section 7(b), which I agree was added in response to our decision in
 
 O'Laughlin
 
 , modified our holding, but only to the extent that it allowed for a civil judgment creditor in a case
 
 related
 
 to the underlying criminal matter to garnish the cash bail posted by the defendant. Thus, rather than an additional safeguard, as the majority characterizes Section 7(b), I see it as a narrow exception to the general rule that bail bonds cannot be garnished. Under this interpretation, I see no reason to now find that our decision in
 
 O'Laughlin
 
 does not preclude garnishment of the bail bond in this instance.
 

 I prefer adopting the approach our neighbors in Illinois have implemented, generally finding that without express statutory authority, bail bonds are subject to neither attachment nor garnishment by private persons.
 
 See
 

 Gende v. Flemming
 
 ,
 
 55 Ill.App.3d 659
 
 ,
 
 13 Ill.Dec. 496
 
 ,
 
 371 N.E.2d 191
 
 , 192 (1977) ;
 
 A-1 Lithoplate, Inc. v. AFS Pub. Co.
 
 ,
 
 66 Ill.App.3d 560
 
 ,
 
 23 Ill.Dec. 601
 
 ,
 
 384 N.E.2d 395
 
 , 396 (1978). Such an approach aligns with one of the primary purposes of bail bonds-securing the defendant's presence at hearings-which I'm afraid may be undermined when a defendant realizes he will not recover his bail bond money, despite complying with the terms of his bond. It also guards against the undue delay, excess litigation, and collision between judicial tribunals that is caused when unrestricted garnishment of bail bonds is allowed.
 
 See
 

 Gende,
 

 13 Ill.Dec. 496
 
 ,
 
 371 N.E.2d at 193
 
 . We need not look further than the case at bar to identify an instance where a court clerk was forced to choose between two conflicting court orders. Where the victim in the criminal case is also the judgment holder, it makes sense to override the purposes of bail bonds and that is precisely what our legislature has done here,
 
 Ind. Code §§ 35-33-8-7
 
 (b), but had our legislature intended to make bail bonds the subject of garnishment in other circumstances, I trust they would have outlined those particular instances in our statutes as well. Should our legislature wish to amend the existing statute to expose cash bonds in criminal cases to routine garnishment, they are certainly empowered to do so. But until then, our Court should interpret narrowly the circumstances under which bail bond garnishment is permitted.
 

 Furthermore, even if bail bonds are not different than other money held by a third party, I fear the majority overlooks two issues that arise with today's holding. The first is a practical complication; very little in the majority's opinion guards against the garnishment of bail bonds before the matter pending has concluded. Although the majority states in one of the discussion's opening paragraphs that cash bond
 "funds [held by the court clerk] are available to the judgment-creditor only if the criminal court has ordered the bond released," op. at 1094, it neglects to discuss this point further and fails to reference it in its conclusion. My fear is that, without an explicitly articulated mechanism keeping the bail bond funds in the custody of the trial court until the pending matter is complete, a trial court may be left handicapped in its efforts to ensure the defendant's return for future hearings. It is true that in the instant case the bail bond no longer served the purpose of ensuring Kempf's appearance before the criminal court, but it is not difficult to see how the vacuum left by today's decision could hinder a trial court's ability to secure a defendant's return for future hearings. Although I disagree that bail bonds are garnishable without specific legislative authorization, if we read our statutes to allow garnishment of bail bonds in all situations, we should also do more to make explicitly clear that such garnishment can only occur after the pending criminal matter has concluded.
 

 The second is a much more serious issue. The majority overlooks that its holding is in direct conflict with two sections of our bail bond statute. The first, Indiana Code section 35-33-8-3.2(b) requires "the clerk to remit the amount of the deposit remaining under subsection (a)(2) to the defendant" "[w]ithin thirty (30) days after disposition of the charges against the defendant." The second, Indiana Code section 35-33-8-7(f), says: "[t]he clerk shall return a deposit, less the administrative fee, made under section 32(a)(2) of this chapter to the defendant, if the defendant appeared at trial and the other critical stages of the legal proceedings." The plain language of these statutes seems quite clear to me: the statutes require return of the funds to the defendant. But the majority concludes that "the Clerk's duty was to hold the cash bond posted in the criminal matter pending the Civil Court's determination of Garner's right to the proceeds to satisfy his judgment." Op. at 1100. I fear the majority's interpretation of the bail bond statutes places conflicting duties on clerks; clerks would have to both remit bail bond funds to a defendant and hold the funds pending proceedings supplemental. The two are incompatible; the Clerk will breach a legal duty either way. Such a contradiction could not have been the legislature's intent, but we can avoid contradiction by applying our case law's statutory construction principles. First, we have repeatedly said that "irrational and disharmonizing" results cannot stand.
 
 West v. Office of Ind. Sec'y of State
 
 ,
 
 54 N.E.3d 349
 
 , 355 (Ind. 2016). Likewise, we avoid reading statutes to reach unjust results.
 
 E.g.
 

 Tin Thang v. State
 
 ,
 
 10 N.E.3d 1256
 
 , 1264 (Ind. 2014). Since the majority's outcome is both disharmonizing and unjust-it is at odds with a plain reading of our bail bond statutes and subjects clerks to personal liability for following the letter of the law-only an interpretation of our statutes that spares a clerk liability should prevail.
 

 In sum, I believe a reading of the statute as broad as our majority has allowed-permitting garnishment of a bail bond to satisfy a judgment in an unrelated civil case where our legislature has not authorized it-departs from the way we treat criminal statutes. I also fear the majority overlooks the tension within our statutes that this holding creates and the impossible predicament it places our court clerks in. Given the criminal court's order directing release of the bond proceeds, and in absence of statutory authority indicating that garnishment of the posted bail is permissible to satisfy a judgment from an unrelated civil case, I think the Clerk correctly released the cash bond to Kempf's criminal defense attorney. Accordingly, I would affirm the civil trial court's decision to deny Garner's motion for proceedings
 supplemental and find that the Clerk cannot be held liable to Garner.
 

 Rush, C.J., concurs.